Please all rise. Here ye, here ye, this Honorable Appellate Court for the Second Judicial District is now open. The Honorable Susan F. Hutchinson. Please be seated. Your Honor, this case on the docket this morning is 2-23-0257, equal with the state of Illinois. Plaintiff's appellee would be Daniel R. McDowell, defendant's appellant. Arguing on behalf of the defendant's appellant, Mr. Jeffrey Bruce Kirkland. Arguing on behalf of the appellee, Ms. Lynn M. Patterson. And good morning, counsel. Good morning, Ms. Harrington, if you can hear us. Good, we can hear you, so that's the check. Mr. Kirkland, whenever you're ready. May it please the court and counsel, good morning, your honors. This court should reverse DeMora McDowell's convictions for armed violence and unlawful delivery of a controlled substance because his attorney represented him with an actual conflict of interest during plea negotiations. When would you say this conflict started, if in fact we make the finding that there was a conflict? I think the key point of conflict in this case is representation during plea negotiations and the reason I answer that way is because of the nature of the state's offer to resolve these cases. The state made global offers, which tied the two cases together, even though they were completely separate incidents that led to the charges. No stand-alone offers on either case. So let me go back chronologically and set the stage for that answer. Mr. McDowell first was charged with first degree murder. The drug cases came later. When he was charged with the drug case, count three of the drug indictment included conspiracy charges against Blake Mears. Mr. McDowell's counsel, Lawrence Wade, informed the court he could not represent Mr. McDowell on the drug cases because he represented co-defendant Blake Mears. A public defender was appointed to represent Mears, so at that point the conflict had been somewhat resolved because the two parties had different counsel. Let me ask him just a quick question. Once those drug charges were charged, Mr. Wade, I believe it is, he came in almost immediately and said there's a conflict, correct? That is correct. All right. public defender to be appointed on those drug cases. And sometime just before or about the time of the appointment of the public defender is when the state made its first global plea offer to resolve the cases. That plea offer would have required, had Mr. McDowell accepted it, he would have pled to first degree murder in exchange for a sentence of 28 years. And the drug cases would have been dismissed pursuant to that. All of them, including Mr. Mears, correct? My understanding is that offer was made to Mr. McDowell only. All right. There was nothing in the record that indicates Mr. Mears is included in the global plea offer that was made to my client, Mr. McDowell. But did the public defender participate in that particular plea? Was he there? Did he hear it? Did he know about it? Let's put it that way. We don't know. The timing of this appointment of the public defender is interesting because how we know about the first global offer is in September of 2022, the state reports to the court prior to trial on the drug cases we made this global offer a year and a half ago. Did Mr. Wade ever appear in the drug case?  No, he did not. Upon the indictments being brought into court, he informed the court he could not appear and would not enter an appearance on behalf of Mr. McDowell. So when the court is apprised of the global plea offer, the state says it was made a year and a half earlier, and if you wind the clock back, a year and a half lands you a month before the public defender was even appointed in the drug cases. There was about a six-month period there where Mr. McDowell was not represented in the drug case. But ultimately, Mr. McDowell rejected the request or rejected the plea. I'm sorry. Yes, that was rejected, and he ended up going to trial and being convicted in separate bench trials. Right. But where the conflict comes in, where the actual conflict comes in here, is the position that Mr. Wade was placed in by virtue of a global offer to Mr. McDowell. At that time, he did actively represent co-defendant Mr. Mears. So the offer is plead guilty to murder, dismiss the drug case. So when he goes to Mr. McDowell to present this offer or during the discussion of this offer, it would have resulted in dismissal of the drug cases. But at that time, he represents a co-defendant. He can't separate out the dismissal of the drug case from the plea to first-degree murder. So he's placed in the position of having represented Blake Mears and being forced to consider what is the impact on my client who I represent in this indictment, Mr. Mears, of counseling my client, Mr. McDowell, in the murder case to accept the offer and have his case dismissed, or do I, is it in Mr. Mears' interest to have the case continue? That's a hypothetical you're offering to us, right? No, that's fact, I believe. I mean, we can talk about the consequences, but that's a real choice. What is the actual harm to the defendant here? What's the actual harm that was created by this purported conflict? The actual harm is the diluted loyalty of Mr. Wade, his trial counsel. When he's counseling Mr. McDowell on that first global offer to plead guilty and get the case dismissed on the drug charges, the shadow of Mr. Mears is right there in the room, too. What's in the best interest of Mr. Mears, to have Mr. McDowell's drug case continue or to plead guilty to the murder and have it dismissed? That is the divided loyalty. Mr. Wade is placed in a position of also considering the impact on his client, Mr. Mears' case, drug case, when he's counseling Mr. McDowell whether or not to accept a plea in the case that he represents him on, the murder case, in the corollary of getting that drug case dismissed. He ended up not pleading guilty to murder? Correct. But he ended up being convicted of armed violence? Correct. Right. So he was ‑‑ I mean, I'm just trying to understand how did the, quote, unquote, deficiency in counsel's strategy, how was it affected and how was the defendant harmed? It's not required to show prejudice. It's not a per se conflict? It's not a per se conflict, but if there is an actual conflict that is shown, even in plea negotiations, that requires reversal. But it still requires demonstration of a deficiency in the performance of counsel that's attributable to the alleged conflict. And I just don't see how it is possible you can argue that your client was harmed when he was not convicted of the greatest offense. He was convicted of armed violence. Well, the harm is ‑‑ But you have to show a deficiency in counsel's strategy. We have to show an actual conflict. And a deficiency that affected the defendant. And that deficiency is the divided loyalty of Mr. Wade when he has to consider the effect of counseling Mr. McDonald to plead guilty or not on the case that he represents Mr. Mears in. His judgment is tainted. And I think that that's where, you know, I've quoted the Holloway case. And they talk in the United States Supreme Court talks about it's so difficult to discern what that prejudice is here. Of course, in the case of joint representation, the evil is what the advocate finds himself compelled to refrain from doing. Not only at trial, but at pretrial plea negotiations. You know, once you establish that there is that conflict in loyalty, the actual conflict is shown and reversal is required. But is there any reason that we wouldn't assume that the public defender representing him was advising him on the drug case? Why would we assume Mr. Wade was? You know, there's no reason to assume he wasn't. In fact, later on, in later plea offers, the assistant public defender, Mr. Powell, says it's a very difficult situation. I'm restricted to advising regarding only the drug case. I can't advise him regarding the murder case. And I assume the same would be the case for Mr. Wade. Not necessarily, because Mr. Powell does not have that conflict where his advice on the drug case has any effect on the murder case. You're trying to say that Mr. Wade couldn't advise him on the drug case, but could only advise him on the murder. He could, but whatever advice he gives on the murder case necessarily implicates an outcome in the drug case. If he accepts the plea offer, if Mr. McDonald accepts the plea offer, if Mr. Wade counsels him to accept the plea offer, then the drug case is dismissed. And he's already said, I've got a conflict. He told the court, I can't represent him in that case. I have a conflict in that case by representation of a co-defendant. If he counsels him to not accept the guilty plea on the murder charge, then the drug case remains. And the point stands that whichever way he counsels him on the murder charge has a direct bearing on the co-defendant, Mr. Mears, whom Mr. Wade said, I can't represent him because of conflict. He gets dragged back into the conflict that he had already presented to the trial court and asked for appointment of different counsel. The trial court agreed and appointed the public defender. Mr. Wade recognized he had a conflict. He could not represent both Mr. McDonald and Mr. Mears in the drug case and said, I can't do that. But then he gets this plea offer and he's pulled right back into that drug case. But that's why I asked the question, Mr. Kirkham, was Mr. Mears' charge included? This global agreement or proposed agreement, it wouldn't make any sense if it didn't include Mr. Mears, would it? All the drug charges will be dismissed. Regarding Mr. McDonald, I don't believe there's anything in the record. When the prosecutor advises the trial court prior to trial on the murder cases, here's the global plea offer we made a year and a half ago to Mr. McDonald. I think global plea offer should be considered in this case, and there's nothing in the record to refute this that I'm aware of, is that the global plea offer is the offer to resolve Mr. McDonald's cases. Well, either way, if he said, I'd take the plea if I were you or I wouldn't take this plea, Mr. McDonald said, I'm not pleading. I'm going to trial. And that was sort of the end of that discussion, correct? Well, we don't know that for sure. We don't know what advice Mr. Well, it doesn't matter. Mr. McDonald didn't accept it. I think it does matter. I think that Mr. Wade has the ability to counsel his client in a way that presents us as a good deal, presents us as a bad deal, and that's the point of the Holloway case. It says, you know, it's not just the punches that are thrown, it's the punches that are pulled. Counseling a client to accept a plea or not, and when you have these consequences that directly implicate a different client who you represent in the same indictment, that's an actual conflict of interest. That's divided royalties. What is the, again, I asked this earlier, I think, in a different way, but what specific deficiency in wage representation of the defendant was attributable to the alleged conflict? What does the record show? The record doesn't show a black and white. Then isn't this an appropriate case maybe for a post-conviction petition? I would argue that it's not. It has to be on the record here. You have to show a specific deficiency in wage representation of the defendant that is attributable to the alleged conflict, and speculation is not sufficient. Hypotheticals aren't sufficient. You have to show a specific deficiency, don't you? The deficiency is the divided loyalty. Holloway makes clear that we don't go into the details of the discussion between attorney and client. We don't invade that privilege when we're attempting to get the answer that I think you're seeking here of what advice did he give him. Was that advice, specific advice, deficient? Go ahead, I'm sorry. The fact that he had to consider the interest or was placed in the position of considering the interest of Blake Mears when he counseled Michelle McDonald, do you take this global plea and either get your drug case dismissed or have it continue on, that in itself is an actual conflict that requires reversal. Was Mears a listed witness in the State's discovery in the drug case? I'm sorry, my time is expiring. Was Mears a listed witness in the State's discovery in the drug case? I don't know the answer. I don't know your answer. What was Mears' role in the drug case? He was charged with conspiracy. Right, but we don't know exactly what he did. We don't know exactly what he did. But he did not testify at the bench trial on the drug cases. His case was dismissed in this particular situation, right? Correct. Ultimately it was some 17 months after this global plea offer was made. Does that answer any more questions? No, not at this time. You will have an opportunity to respond if you choose to after Ms. Arrington. Thank you. Good morning, Your Honors. Counsel, may I please report? My name is Lynn Harrington, and I represent the people of the State of Illinois. Your Honors, before I introduce my arguments, I'd like to touch on some of the points that opposing counsel made this morning. First, with regard to Justice Burkett's comment, he is absolutely correct that the defendant here has never shown any specific deficiency in Wade's representation that is attributable to any alleged conflict of interest. There's nothing here, there's no divided loyalty. That first global offer had nothing to do with Mears. Now, if we had hypothetically a situation where the first global offer said, in exchange for your testimony against Mears, we'll drop the drug charges and we'll give you 28 years on the murder, then that might be something where Mr. Wade was put in a bind. But that's not the fact of this case. Your Honor, in fact, this whole case comes down to a potential conflict, not an actual conflict. Mr. Wade did the right thing in October of 2020 when he said to the court, Your Honor, excuse me, I can't file an appearance on behalf of Mr. McDonald because I'm already representing Mr. Mears on the drug case. What that means is there would be an actual conflict if I filed an appearance on behalf of the defendant here in the drug case. But he didn't. He never did. He made it clear on the record several times that he did not represent defendants' interest in the drug case. And when Mr. Powell, the assistant public defender, came on, he also made it very clear on the record that he was advising defendants legally on the drug case. But the first issue the state would like to bring forth to this court is very important, and it's really that the defendant has forfeited this issue on appeal because he has cited no record for this proposition of an actual conflict of interest and he's turned the Illinois Supreme Court law on actual conflict of interest on its head when he says, first he says the initial conflict remained throughout the case even after Powell had been appointed to represent him in the drug case. And then at page 22 of his brief, he says, He should not be required to show facts establishing a conflict where counsel himself reported the conflict and the trial court appointed a different counsel. That doesn't make sense to the state, Your Honors. Then he's saying that whenever a defense counsel does the right thing and tells the trial court about a potential conflict and the trial court appoints separate counsel, then there's an actual conflict of interest and the whole case is tainted? Ms. Harrington, I do have a question. I mean, this case took a rather long period of time. It was out there. There were things going on, I assume, that aren't relevant to this particular issue. But if that plea came a year or that global proposal came a year and a half before public defender was appointed for Mr. Mears, isn't that something we should be concerned about? Actually, Justice Hutchinson, the first global offer, we don't know the exact date, but the defendant alleges that it's March 21 when the assistant public defender was appointed in April 21, a month. But he gets that information from an ASA statement on the record, September 22, excuse me, 26 of 2022, when he says, Your Honor, I want to make this of the record that we offered a defendant a global plea a year and a half ago. Okay, so if we take him at his word, that's March 2021. But that's very vague, Your Honor. But even assuming that's the case, there still was no conflict of interest here, as I have mentioned. That global offer just went – it was on the murder case alone and dismissing all the drug charges. Had Powell been appointed then, and he very well may have, the record is unclear on that, and it's defendant's burden here, not the state's, to prove ineffective assistance to counsel. But had no counsel been appointed on the drug case – or excuse me, had counsel been appointed on the drug case, what would they have advised their client to do? Oh, don't take that offer. What, dismiss all your drug cases? Don't take that offer. The only issue here was whether he should have taken 28 years on the murder. And that's what Mr. Wade was advising him on. Whether there was enough evidence to find him guilty beyond a reasonable doubt. Whether he wanted to do 28 years on the murder, which turned into armed violence. And as you correctly noted, Justice Hutchinson, it is on the record that the defendant here was never interested in pleading guilty. He wanted his day in trial, at trial, and he got it. Now he's upset at what happened when he got his day in court. Specifically, at the second global offer, Mr. Wade says on the record about giving this plea to the defendant. He said, he had brought to defendant each and every one of these options that the state has provided to me. And in so doing, I gave defendant that option, and his response to me was, we're going to trial. And that's on the record, page 380. Then with regard to the May 12th, the third and final offer, before they go to trial on the murder armed violence, Mr. Wade says, Judge, the prosecutor wrote out his offers, wrote out the possible penalties. I made a copy of that, and I took that to the defendant at the jail. I do believe he did receive that, and when I met with him, he explained that he went over that, and he continues to persist in his innocence, and he was requesting a bench trial. Isn't the fact that Mears was charged in a conspiracy with the defendant, doesn't that pose a risk to the defendant? Even though the defendant was represented by different counsel on a drug case, doesn't the fact that the co-defendant was charged with a conspiracy pose a risk? And I'm looking at the Illinois Rules of Professional Conduct, 1.7. A concurrent conflict exists if, subsection A2, there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person, or by personal interest of the lawyer. The fact that Mears was a co-defendant, didn't that pose a risk? Respectfully, Justice Burkett, no, it did not. Because of the fact that our Illinois Supreme Court has said in 2017 in People v. Nelson, when joint representation is undertaken, but the defendants are tried separately, it's less likely that counsel will face a conflict. Here, these cases were severed. So there's no possibility that Wade engaged in any actual conflict of interest. And even if the defendant is alleging an actual conflict of interest, as Justice Burkett has properly pointed out, he still has to prove that the defendant must demonstrate Wade's performance was adversely affected, no evidence of that, and he has to identify a specific deficiency. He hasn't done that. Just this broad concept of deluded loyalty is not enough. This is probably aging me a bit, but, you know, the phrase that comes to mind to me is the old commercial where that lady said, where's the beef? Referring to Wendy's competitor's lack of ground beef in their hamburger. Where's the beef? You can't just make these allegations and not back them up. The defendant has pointed to no evidence in the record to show an actual conflict of interest. Also, you know, along the same lines is the absence of evidence is not evidence. We don't have any evidence here that Mr. Wade did anything wrong. In fact, the opposite is actually true. We have evidence that Mr. Wade did everything right. At the inception of these cases, Mr. Wade told the court, or excuse me, actually, the ASA told the court on behalf of Mr. Wade that Mr. Wade was not going to enter an appearance in the drug case. If that's the case, Your Honor, why would he then engage in inappropriate, giving inappropriate advice to Mr. McDonald on the drug case? This case isn't like Spreitzer where there was a potential conflict that was not brought to the court's attention. This was brought to the court's attention. The court did the right thing. Everything proceeded along. As the people have respectfully said earlier, the only evidence of the record is that the defendant wanted his day in court. He got his day in court. He just didn't like the outcome. He didn't like the sentences because those earlier offers that were really much better, he didn't take them when he had been properly advised. But there's no correlation here to Mears. There's nothing. The defendant has failed to prove ineffective assistance of counsel. Justice Burkett raised the issue of because something isn't in the record, wouldn't this be a more appropriate case for post-conviction where other issues could be raised and identified? Should we take that into account as we decide this case? Your Honor, no, I don't think so because this is a direct appeal and defendant has chosen to bring this issue on appeal and he has utterly failed to prove his case. It's his burden. He alleged an actual conflict of interest when there was a vast potential conflict of interest, which was immediately satisfied by the trial court, and he didn't show any of the prongs necessary set out by our Illinois Supreme Court to show an actual conflict of interest. Therefore, his conviction should be affirmed. If anyone has any further argument, I can conclude unless there are more questions. Well, I'll try not to argue, Ms. Harrington. You argue, I'll ask questions. But I have none at this time. I'm really sad as I said it. I apologize. I'm okay. All right. I guess we're all out of questions at this time. Thank you, Ms. Harrington. We will go back to Mr. Kirkham if he chooses to do so. Thank you, guys. Briefly, I'd like to clarify an answer I made to Justice Hutchinson about the timeline. I stumbled on the year. If you take the time that the state first reported and made a global offer, go back a year and a half. That would be in March. One month later was when a public defender was appointed to represent Mr. McDonald in the drug case. I agree that that could shift either way, and I believe I said it's possible that Mr. McDonald was not represented in the drug case by a public defender at the time of this global offer. It was very close. Could go either way. Not clear from the record. Now, to the state's point, the state is heavily invested in this notion that that global offer won wasn't really a global offer. It was only about the murder case because it would result in dismissal of the drug case, and, you know, that's a no-brainer. So that's just out of the mix. It's not out of the mix because they're tied together. You can't a la carte that offer. You can't choose one and not the other. And because they're tied together and because that drug case is an integral part of that plea offer, Mr. Wade was put in the position of advising his client regarding a plea in which he acknowledged he had a conflict of interest. He represented Blake Muir, who was charged with conspiring with the defendant. He recognized that there was a conflict. He couldn't represent them both, and he said so. But because of the global plea offer, he couldn't separate out that drug case when he's counseling his client on the murder case. They're a packaged deal. He is counseling his client on a global plea offer that includes a case that he has admitted he has a conflict of interest in. The trial court accepted that representation and appointed the public defender. And to say that that's not really a global offer just makes no sense. Our review is de novo, correct? That is correct. So we're not really bound by anything that the trial court said with respect to the conflict or what counsel said if he says I have a conflict. It's up to us. That's true. Well, I'm trying to wrap my mind around your point that we're going to review de novo counsel's representation that he had a conflict in representing Mr. Mears and Mr. McDonald's. I'm saying ultimately the issue is whether or not the impact of any perceived conflict had on the representation of the defendant. That's a de novo review by us. Correct. Correct. And you haven't pointed to any deficiencies. Just in the existence of the conflict. The possibility of the impact of. I believe it goes beyond the possibility. It is an actual conflict. He is representing Mr. McDonald and Mr. Mears in the same case, in essence, by entertaining that global plea offer in plea negotiations. Plea negotiations are a critical stage of proceedings. Defendant has right to competent counsel at those proceedings, and a conflict of interest in plea negotiations results in a reversal. And that's what we have here. We have an attorney who's representing two different clients in the same drug case. You can't have that. That's an actual conflict of interest that requires reversal. The defendant was advised on the record as to each of the plea agreements or potential plea offers, correct? Correct. And on each occasion he said, no, I'm rejecting it. But we don't know what happened at that first plea offer. We know that the counsel had conflicting loyalties, and that's why Holloway is important, that we can't parse what happened there. We find the actual conflict and we affirm. There's no harmless error analysis. I respectfully submit that you're overemphasizing the notion of the defendant must show deficient, some defect in the actual advice itself. The issue is counsel was placed in that position of having conflicting loyalties and let himself be put in that position even after he earlier had extracted himself from that very same situation. Just the mere fact that he is in the position to advise the defendant on the drug case because it's an integral part of the global plea offer, while he's representing mirrors in that case, is an actual conflict of interest that requires reversal. Thank you. I'll just briefly conclude by asking this, if there are no more questions. Okay. Justice Long? I respectfully ask this Court to reverse Mr. McDonald's convictions for armed violence and unlawful delivery of a controlled substance and remand this to the circuit court for further proceedings. Thank you. Thank you, Your Honors. Thank you, counsel. Thank you both, counsel, for your argument this morning. We will take this under advisement. We will make a decision in due course. Thank you. We have one more question. Thank you, Your Honor. We have one more question. Okay. If we were to accept your argument that there was an actual conflict and that affected mutual age representation and we reversed the case, we'd reinstate the murder charge, correct? I'm not sure. No, those were dismissed on a motion of the State prior to trial, and they went on the second indictment, counts four through six. So we would reinstate those charges and go back. Let's say we get another shot at making an argument that there was a separate act besides the discharge and the defendant could be convicted of murder. Would you think about that? We consult with our clients about all the issues that we raise, Your Honor. That's all. You're sure? Yeah. Okay. All right. Again, thank you for your arguments. We will now stand adjourned, and you can go forth. All rise.